IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOAN E. QUINN, Individually and as Personal Representative of the Estate of JAMES ALBERT QUINN, Deceased, et al.<br><br>      Plaintiffs,<br><br>v.<br><br>AVCO CORPORATION, LYCOMING ENGINES, CONTINENTAL MOTORS, INC., TELEDYNE CONTINENTAL MOTORS, INC., BENDIX CORPORATION, ALLIED-SIGNAL, INC., HONEYWELL INTERNATIONAL, INC., JOHN DOE 1-50, JOHN DOE 51-100<br><br>      Defendants. | Civil Action No. 15-cv-1005-RGA |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR RESPONSE IN OPPOSITION TO DEFENDANT CONTINENTAL MOTORS, INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Dated: June 14, 2019

Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
**FARNAN LLP**
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
jjfarnan@farnanlaw.com
bfarnan@farnanlaw.com
mfanran@farnanlaw.com

Cynthia M. Devers (admitted *pro hac vice*)
THE WOLK LAW FIRM
1710-12 Locust Street
Philadelphia, PA  19103

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

I. NATURE AND STAGE OF PROCEEDINGS………………...…………………….1

II. SUMMARY OF ARGUMENT…………………………...….………………………2

III. COUNTERSTATEMENT OF FACTS………………….....………………………2

IV. ISSUE-SPECIFIC STATEMENT OF FACTS AND LEGAL ARGUMENT…..……..3

V. CONCLUSION………………………….....……………………………..……....16

## TABLE OF AUTHORITIES

Page(s)

Cases

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................................. 4

*Burroughs v. Precision Airmotive Corporation*,
   78 Cal.App.4th 681, 93 Cal.Rptr.2d 124 (Cal.App. 2000) ................................................. 5, 6, 9

*Butler v. Bell Helicopter Textron*,
   135 Cal.Rptr.2d 762, 109 Cal.App.4th 1073, (2003) ..................................................... 13, 14, 15

*Caldwell v. Enstrom Helicopter Corp.*,
   230 F.3d 1155 (9th Cir. 2000) ................................................................................................ 11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................................................. 4

*Flores v. RAM Aircraft Corp.*,
   No. 96-1507, 2000 WL 34017118 (S.D. Fla. Aug. 31, 2000) .................................................. 11

*Hinkle v. Cessna Aircraft Co.*,
   No. 247099, 2004 WL 2413768 (Mich. App. Oct. 28, 2004) .................................................. 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .................................................................................................................. 4

*P.N. v. Clementon Bd. of Educ.*,
   442 F.3d 848 (3d Cir. 2006) ..................................................................................................... 4

*Peterson v. Lehigh Valley Dist. Council*,
   676 F.2d 81 (3d Cir. 1982) ....................................................................................................... 4

*Robinson v. Hartzell Propeller Inc.*,
   326 F.Supp.2d 631 (E.D. Pa. 2004) ................................................................................. 13, 14

*Sheesley*,
   2006 WL 1084103 ................................................................................................................... 11

*Siegel Transfer, Inc. v. Carrier Express, Inc.*,
   54 F.3d 1125 (3d Cir. 1995) ..................................................................................................... 4

*United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*,
   467 U.S. 797, 104 S.Ct. 2755 (1984) ................................................................................ 12, 13

Statutes

10 Del. C. § 3701 ............................................................................................................................ 1

10 Del. C. § 3721 ............................................................................................................................ 1

10 Del. C. § 3724(a) ....................................................................................................................... 1

Rules

Fed. R. Civ. P. 56(c) .................................................................................................................. 3, 4

Fed. R.Civ. P. 11 ............................................................................................................................ 8

Regulations

14 C.F.R. §33.37 .......................................................................................................................... 12

14 C.F.R. §§ 21.3(a), (b),(c), and (e) ........................................................................................... 12

14 C.F.R. § 21.99 ............................................................................................................... 6, 12, 15

Other Authorities

1994 U.S.C.C.A.N. 1638 ............................................................................................................... 9

H.R. 103 ......................................................................................................................................... 9

H.R. 1307 ....................................................................................................................................... 8

H.R. 2238 ....................................................................................................................................... 8

H.R. 2815 ....................................................................................................................................... 8

H.R. 4717 ....................................................................................................................................... 8

H.R. Rep. No. 103-525(I) .............................................................................................................. 9

S. Rep. 103-202 ............................................................................................................................ 10

I.      **NATURE AND STAGE OF PROCEEDINGS**

This action arises out of the November 5, 2013 accident involving a Piper PA-32R-301 aircraft (N408DM) that fatally injured Plaintiffs' decedent, James Quinn, and pilot Robert Groh. The accident aircraft was equipped with a Lycoming IO-540-K1G5D engine, which used a Continental dual magneto. Plaintiffs' claims against Continental Motors Inc. ("Continental") are for Strict Liability (Count Four), Negligence (Count Five), Breach of Warranty (Count Six), Negligent Infliction of Emotional Distress (Count Ten), Survival (Count Eleven), and Wrongful Death (Count Twelve). These Survival and Wrongful Death Actions are brought under 10 Del. C. § 3701, *et seq.* and 10 Del. C. § 3721, *et seq.*, and 10 Del. C. § 3724(a). At all times relevant, Continental was the designer, manufacturer, and PMA holder of the Bendix Dual Magneto Part No. 10-682560-13 (D6LN-3000). (D.I. 1 at ¶¶ 18-25; Devers Dec. at Ex. C, Davis Dep. at 16-20).

Plaintiffs respectfully request that the Court deny Continental's Motion since there are numerous genuine issues of material fact, which preclude the entry of summary judgment. Moreover, the record establishes that Defendant Continental is responsible as the designer, manufacturer, and type certificate holder for the defective dual magneto product line and failed to comply with multiple duties imposed upon it, which proximately caused the crash that took James Quinn's life.

## II. SUMMARY OF ARGUMENT

  A. Continental is not entitled to summary judgment because there remain genuine issues of material facts on whether Continental is liable under successor liability as well as in their ongoing present role as the party responsible for the continuing airworthiness of the D3000 model magneto product line, including the subject magneto.

  B. Continental is not entitled to summary judgment because Plaintiffs have established a causal link between the subject accident and defects in the Continental magneto and therefore raises questions for the jury to decide.

  C. Plaintiffs' claims are not barred by the General Aviation Revitalization Act ("GARA"), and therefore summary judgment is inappropriate.

  D. The doctrine of judicial estoppel does not apply in this case, and Plaintiffs are not judicially estopped from pursuing their claims that the defective dual magneto caused the accident. Therefore, summary judgment is not appropriate.

  E. Nor is Continental entitled to partial summary judgment for their claims of strict liability, negligent infliction of emotional distress, punitive damages, breach of warranty, and claims filed by the individual beneficiaries of the Quinn Estate.

## III. COUNTERSTATEMENT OF FACTS

### A. The Accident and Cause of the Failure

On November 5, 2013, Plaintiffs' decedent, flight instructor James Quinn, and pilot Robert Groh were returning from a trip and intended to stop for fuel in Kirksville, Missouri. (Suchocki Rpt. at 1). The accident aircraft's flight path showing the final approach and accident location is shown below:



(Devers Dec. at Ex. A, Cauble Slide 14).

This accident was ultimately caused by the engine's inability to respond to the pilot's demands for increased power to respond to an out-of-trim condition. This was the result of the rotor dragging on the pole shoes of the Continental dual magneto. (Suchocki Dec. at ¶9). Plaintiffs incorporate by reference the facts set forth in the Declarations of John Suchocki, Mark Seader, Mark Hood, and Cynthia Devers.

IV.   **ISSUE-SPECIFIC STATEMENT OF FACTS AND LEGAL ARGUMENT**

   A.   **The Applicable Summary Judgment Standard**

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine

3

issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and that there are no facts supporting the nonmoving party's legal position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The movant meets this burden only by pointing to an absence of any evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. If the initial burden is met, then the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see also*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (explaining that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). An issue is "genuine" if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party; a factual dispute is "material" if it might affect the outcome of the action under the governing law. *Anderson,* 477 U.S. at 248-49.

When deciding a motion for summary judgment, the Court must view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995); *P.N. v. Clementon Bd. of Educ.,* 442 F.3d 848, 852 (3d Cir. 2006). The Court is not to resolve factual disputes or make credibility determinations. *Siegel Transfer,* 54 F.3d at 1127. Summary judgment is inappropriate when a disagreement about the facts, or the proper inferences that a fact finder could draw therefrom, exists. *Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir. 1982).

## B. Continental is Responsible for the Dual Magneto Product Line and Failed to Disclose Known Defects to the FAA

Continental is responsible for the dual magneto product line as the designer, manufacturer, and parts manufacturing approval holder under Federal Aviation Regulations in its own right, and as well as successors-in-interest to the product line. As to the merits to Continental's suggestion that it has no responsibility for the design defects in the subject magneto, there are none. Continental not only assumed duties as a manufacturer when it acquired the PMA license to sell and support all Bendix magnetos in the product line, but it also inherited those duties as a matter of law. *Burroughs v. Precision Airmotive Corporation*, 78 Cal.App.4th 681, 690-91, 93 Cal.Rptr.2d 124, 131-32 (Cal.App. 2000) (discussing the duties of a successor manufacturer who holds the PMA license for products manufactured by a predecessor). In the context of aviation, at least one entity must be responsible for the safety of a certified product line at all times. In *Burroughs*, the following rules of law were established in the context of a successor PMA holder, such as Continental here:

- Although [the successor] did not actually manufacturer the particular carburetor in this case, it is a manufacturer of general aviation aircraft parts, and it took over the manufacturer's responsibilities for the Marvel Schebler product line. *Burroughs*, 78 Cal. App. 4th at 692;

- "by virtue of the extensive rules and regulations governing the aviation industry, a successor manufacturer steps into the shoes of the predecessor with regard to the duties of reporting defects." *Id.* at 693.

- [t]he holder of the PMA on the Marvel Schebler line of carburetors, was obliged to comply with these [defect] reporting requirements even though technically the particular model of carburetor in question here 'was not manufactured by it." *Id.*

- Again, after [the successor] took over the Marvel Schebler carburetor line in 1990, it became the entity responsible for issuing these manuals and bulletins and fulfilling *the manufacturer's* obligations for continuing airworthiness." *Id.* (emphasis in original).

5

- In the eyes of the FAA, [the successor] was the 'new manufacturer' of the Marvel Schebler carburetor. *Id.*

- The federal regulatory scheme contemplates that at all times there will be a designated OEM for an aircraft part or component, burdened with the reporting duties and responsibilities as to that particular product. Here, [the successor] was the entity which assumed those duties with respect to the MSA model carburetor in this case. *Id.*

The same follows for Continental because after the product line purchase and PMA transfer, the original manufacturer ceased all monitoring of service issues concerning the product line. In fact, Continental petitioned the FAA to obtain the PMA applicable to the entire product line. (Devers Dec. Ex. C, Davis Dep. at 15:23-20:16). Therefore, pursuant to its federal regulatory duties, Continental was responsible for reporting design defects to the FAA and users of the products and to correct the deficiencies. 14 C.F.R. §§ 21.3, 21.99.

### C. Plaintiffs' Claims are Not Barred by GARA

#### 1. GARA Standard

GARA is a conditional federal statute of repose that applies in very limited circumstances when the parts alleged to have caused the accident were installed in the aircraft more than eighteen years before manufacture, and the manufacturer does not conceal or misrepresent the existence of a defect to the FAA. GARA as enacted reflects Congressional balancing of interests between manufacturers and accident victims by including provisions inuring solely to the benefit of the aviation manufacturers, i.e. GARA § 2(a)(1); as well as provisions inuring solely to the benefit of accident victims, namely the Rolling Provision codified at GARA § 2(a)(2) and GARA's Misrepresentation Exception § 2(b)(1).

GARA in pertinent part provides:

SEC. 2 TIME LIMITATIONS ON CIVIL ACTIONS AGAINST AIRCRAFT MANUFACTURERS.

>   (a) IN GENERAL.- Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred-
>
>   (1) after the applicable limitation period beginning on-
>   (A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or
>   (B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft; or
>
>   **(2) with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.**
>
>   **(b) EXCEPTIONS – Subsection (a) does not apply –**
>   **(1) if the claimant pleads with specificity the facts necessary to prove, and proves, that the manufacturer with respect to a type certificate or airworthiness certificate for, or obligations with respect to <u>continuing airworthiness of, an aircraft or a component, system, subassembly, or other part of an aircraft knowingly misrepresented to the Federal Aviation Administration,</u> or concealed or withheld from the Federal Aviation Administration, required information that is material and relevant to the performance or the maintenance or operation of such aircraft, or component, system, subassembly, or other part, that is causally related to the harm which the claimant allegedly suffered;**
>   . . .
>   SEC. 3 OTHER DEFINITIONS
>   . . .
>   (3) the term "limitations period" means 18 years with respect to general aviation aircraft and the components, systems, subassemblies, and other parts of such aircraft;

(emphasis added).

GARA is not the wholesale vindication of manufacturer rights over those of accident victims that Defendant urges this Court to use as the starting point of its GARA analysis. Rather, GARA is the only surviving remnant of a series of tort reform measures which the General

7

Aviation Manufactures' Association and industry players lobbied through Congress in the 1980's and 1990's. As shown GARA's legislative history and the form in which it was ultimately passed it was intended to be a careful Congressional balancing of the competing interests of aviation manufacturers and accident victims.

The original bills presented during the 99th, 100th, 101st, and 102nd Congressional terms are collectively referred to as "The General Aviation Liability Standards Act." *See* H.R. 4717, 99th Cong. (1986); H.R. 2238, 100th Cong. (1987); H.R. 1307, 101st Cong. (1989); H.R. 2815, 102nd Cong. (1991). These Bills contained provisions only protecting of aviation manufacturers and included a uniform federal product liability standard of care, the elimination of joint and several liability, a twenty year absolute statute of repose, the preclusion of subsequent remedial measures, specific limitations on the type of evidence admissible to prove a claimants' economic damages, a heightened uniform federal standard for punitive damages, a uniform standard statute of limitations, a specific emphasis on awarding sanctions under Fed. R.C.P. 11, and the creation of federal subject matter jurisdiction for aviation accident cases. The proposal was absolute with no exceptions or rolling provision.

Unquestionably, passage of the General Aviation Liability Standards Act would have marked a wholesale vindication of the rights of manufactures over accident victims. Congress, however, did not afford that victory to manufacturers, but instead rejected every proposed provision of The General Aviation Liability Standards Act. In its place, the 103rd Congress only enacted a narrow and limited statute of repose containing numerous factually-driven exceptions and provisions protecting the rights of accident victims. In the legislative history of GARA, the 103rd Congress explained its rationale in enacting GARA and the inclusion of the very provisions upon which Plaintiff here relies upon to defeat summary judgment.

In the first House Report, the 103rd Congress noted that "[t]he bill is designed to limit excessive product liability costs, **while at the same time affording fair treatment to persons injured in general aviation accidents**." H.R. Rep. No. 103-525(I) at 1 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1638 (emphasis added). Congress stated "[t]o relieve the burden of liability costs, **while treating aircraft operators and passengers fairly**, the reported bill establishes an 18 year statute of repose." *Id.* at 2-3 (emphasis added). The report acknowledged the Rolling Provision; "[i]f a new replacement part is involved, the 18 year period does not start running until the part is installed"; and the Misrepresentation Exception; "**[t]he statute of repose does not apply if a manufacturer knowingly withholds safety information from the FAA**." *Id.* at 3 (emphasis added). With the inclusion of these provisions, "[t]he Committee believes that this bill strikes a **fair balance between manufacturers, consumers, and persons injured in accidents**." *Id.* at 4 (emphasis added). Congress reiterated its reliance upon the Rolling Provision and Misrepresentation Exception as a means for compromise:

> Another element of fairness in the reported bull is that the statute of repose in the bill is "rolling." Under the bill, when a part in an aircraft is replaced with a new part, a new 18 year period begins for that part. **In addition, the bill provides that the statute of repose does not apply if the manufacturer knows of a defect and fails to comply with its obligation to report the defect to the FAA.**

*Id.* (emphasis added). In conclusion, the House again voiced its intentions of compromise:

> In sum, the Committee believes that the standards established by the reported bill will curb excessive liability costs, while at the same time affording fair treatment to persons injured in aircraft accidents. We believe the bill strikes a reasonable balance between the sometimes conflicting objectives of keeping the price of general aviation aircraft at an affordable level and awarding fair compensation to persons injured in general aviation accidents.

*Id.* The second House Report reiterated the elements of fairness contained in GARA. H.R. 103-525(II) (1994), *reprinted in* 1994, U.S.C.C.A.N. 1644, 1647.

9

The Senate likewise voiced its approval of the bill based on the evenhandedness it saw among the competing interests of manufacturers and victims. The Senate Report states "[g]iven the fact that the average piston-engine aircraft is over 27 years old and one third of the fleet is over 32 years old, the question is a matter of **balancing the rights of injured parties and the rights of a manufacturer.**" S. Rep. 103-202 at 2 (1993)(emphasis added). President Clinton also recognized the balancing efforts Congress adopted in enacting GARA. In a statement he signed when enacting GARA, the former president stated "[t]he result is legislation that accommodates the need to revitalize our general aviation industry, **while preserving the legal rights of passengers and pilots**." Presidential Statement on Signing GARA, 33 Weekly Comp. Pres. Doc. 1678 (Aug. 17, 1994)(emphasis added).

GARA, as enacted, reflects this desired interest-balancing and contained provisions that inure solely to the benefit of the aviation manufacturers, i.e. GARA § 2(a)(1); as well as provisions protecting the rights of accident victims, namely GARA § 2(a)(2), 2(b)(1), and 2(b)(4). Plaintiffs respectfully requests this Honorable Court not to view GARA or the associated burdens of proof through the skewed lenses one might use if a statute was enacted as a wholesale vindication of a particular interest over the rights of another. Rather, Congress and the signing President said the application of GARA should be fair, and this means that a court applying the statute should not perceive a non-existent Congressional policy to subordinate the rights of victims to those of manufacturers as a means to craft a result to reach that end. GARA was intended to be a balanced statute of repose which included the Rolling Provision and exceptions as critical equalization measures to ameliorate the harshness an absolute statute of repose would have inflicted upon innocent victims. Without these provisions, GARA would not have passed.

Thus, applying GARA as Defendant urges would not dispense justice to the statute or the parties involved and will result in its misapplication in contravention to its clear language and Congressional intent. Therefore, the Court should begin its analysis with the premise that fairness is the touchstone of the assessment of the GARA affirmative defense.

A plaintiff who proves GARA's Rolling Provision may proceed to trial on a claim arising from the failure of that part. *Caldwell v. Enstrom Helicopter Corp.*, 230 F.3d 1155, 1157 (9th Cir. 2000)(addressing limitation period for replacement flight manual under GARA's Rolling Provision); *Flores v. RAM Aircraft Corp.,* No. 96-1507, 2000 WL 34017118 (S.D. Fla. Aug. 31, 2000)(holding "the limitations clock was restarted for the component seal upon its installation during the Ram overhaul."); *Carson v. Heli-Tech, Inc.*, No. 2:01-cv-643-FtM-29SPC (M.D. Fla. Sept. 25, 2003)(new sleeve installed pursuant to a service bulletin triggered GARA's Rolling Provision); *Sheesley*, 2006 WL 1084103 at *8 (replacement of exhaust component during overhaul triggered Rolling Provision). Here, the dual magneto underwent overhauls and maintenance inspections, and the parts that have been replaced pursuant to Continental's instruction were less than 18 years old at the time of the accident. (Devers Dec. at Exs. D, Maint. Records).

The Knowing Misrepresentation Exception also applies to except the application of GARA here. First, dual magnetos lack redundancy and were improperly certified. To substantiate the certification of the dual magneto product line, Continental had to represent to the FAA that the dual magneto was capable of meeting the federal regulations establishing airworthiness standards. However, the design of the dual magneto is contrary to standard piston aircraft engine design. In fact, federal regulations require the ignition system to have

11

redundancy: "**Each spark ignition must have a dual ignition system with at least two spark plugs for each cylinder and two separate electric circuits with separate sources of electrical energy, or have an ignition system of equivalent in-flight reliability.**"  (14 C.F.R. §33.37). The dual magneto violates this regulation.

As the party responsible for the dual magneto product line and PMA holder of the D3000, Continental had the affirmative ongoing duty to report any failure, malfunction, or defect in any product, part, process, or article for which it is responsible that it determines has or *could result* in certain problems. 14 C.F.R. § 21.3.  Section 21.3 creates an affirmative duty for PMA holders, such as Continental, to investigate product defects and accurately report the results of such investigation to the FAA.

To fulfill Section 21.3 reporting obligations a manufacturer must: (1) report a malfunction or defective condition in its product; (2) that has *or could* result in any of the occurrences listed in Section 21.3(c); and disclose to the FAA as much of the following information as is available: (i) Aircraft serial number; (ii) when the failure, malfunction, or defect is associated with an engine or propeller, the engine or propeller serial number, as appropriate; (iii) product model; (iv) identification of the part, component, or system involved. The identification must include the part number; and (v) nature of the failure, malfunction, or defect. 14 C.F.R. §§ 21.3(a), (b),(c), and (e).

Importantly, the aviation industry imposes duties upon manufacturers to represent the airworthiness of its products and to report any design defects to the FAA.  *In United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 815, 104 S.Ct. 2755 (1984), the Supreme Court explained the certification of aviation products:

> The FAA certification process is founded upon a relatively simple notion**: the duty to ensure that an aircraft conforms to FAA safety regulations lies with**

> **the manufacturer and operator**, while the FAA retains the responsibility for policing compliance. Thus, the manufacturer is required to develop the plans and specifications and perform the inspections and tests necessary to establish that an aircraft design comports with the applicable regulations; the FAA then reviews the data for conformity proposes by conduction a "spot check" of the manufacturer's work.

*Id.* at 467 U.S. at 816-17. (Emphasis added). If the FAA is deprived of this important safety information by the manufacturer it cannot ensure the safety of our nation's airspace. *Butler v. Bell Helicopter Textron*, 135 Cal.Rptr.2d 762, 772-773, 109 Cal.App.4th 1073, 1086, (2003). The design of this safety critical engine component is prone to failures, and lacks the necessary redundancy. (Seader Dec. at ¶35).

Therefore, Continental has an affirmative duty to ensure its products are safe. Since Continental maintains responsibility for supporting the dual magneto product line, it has made it impossible for anyone to rebuild or produce new dual magnetos at all times relevant. There have been numerous instances of failures involving rotor contact with pole shoes in dual magnetos, but Continental has done nothing to advise the FAA, pilots, operators, mechanics, or the flying public that the contact between the rotor and the pole shoes will cause intermittent or complete power loss, that the impulse coupling will ensure that the engine timing will move to the retarded position, or the amount of clearance necessary between the points. (Seader Dec. at ¶17-35).

While Continental had full authority and obligation to provide safety information to owners/operators/technicians, it failed to provide any guidance to address serious safety problems that it recognized prior to publishing the April 2012 Service Support Manual. (Devers Dec. Ex., B).

In *Robinson v. Hartzell Propeller Inc.*, 326 F.Supp.2d 631 (E.D. Pa. 2004), the Eastern District of Pennsylvania specifically rejected the argument GARA included a heavy scienter burden requiring a showing of fraud:

13

> [t]o the extent that *Rickert* stands for the proposition that to defeat summary judgment plaintiffs in this case must produce additional "evidence of intentional or fraudulent conduct on the part of Hartzell" to satisfy "the critical scienter requirement of the GARA misrepresentation exception," the Court rejects *Rickert*.

326 F. Supp. 2d at 654. The Court denied GARA protection because the defendant propeller manufacturer submitted an engineering report that misrepresented the legality of certain vibration levels in a propeller *Id.* at 650. In addition, after the defendant certified the propeller, a large magnitude of propeller failures occurred and the court held that the evidence of the failures and the defendant's explanation of the reason for the failures created issues of fact as to whether the defendant misrepresented, concealed, and withheld the true cause of the failures. *Id.* at 655. The court held "[b]ased on this evidence, a jury could infer that Hartzell was aware of the [alleged defect] but blamed propeller failures on other factors to conceal this problem. *Id.*

Similarly, the Court of Appeals of Michigan did not require fraud-like burden of motive and malicious intent to deceive the FAA when it applied GARA's Knowing Misrepresentation, Concealment, and Withholding Exception in *Hinkle v. Cessna Aircraft Co.*, No. 247099, 2004 WL 2413768 (Mich. App. Oct. 28, 2004). In *Hinkle*, the court relied upon the affidavits of the plaintiffs' experts to find a genuine issue of material fact that Cessna's certification report for the 421B aircraft were based on engines powered above 400 hp when Cessna told the FAA that the engines were only 375 hp. *Id.* at *11. From this fact, the court ruled that the jury could infer that Cessna misrepresented the horsepower capabilities in order to meet the single engine climb requirements under the applicable regulations. *Id.* at *11-12.

In addition, courts have applied GARA's Knowing Misrepresentation, Concealment, and Withholding Exception when a manufacturer's actions were indisputably innocent and explainable. In *Butler v. Bell Helicopter Textron, Inc.,* 109 Cal. App. 4th 1073 (2003), the plaintiff argued Bell Textron failed to report several military accidents to the FAA as required

14

under 14 C.F.R. § 21.3 and was therefore not entitled to GARA protection under the Knowing Misrepresentation, Concealment, and Withholding Exception. *Butler*, 109 Cal. App. 4th at 1088. Bell Textron countered this allegation by arguing that it did not believe it was required to report the military accidents to the FAA and even obtained the affidavit of a former FAA employee who confirmed Bell's interpretation of Section 21.3 of the Federal Aviation Regulations. *Id.* at 1076-77. Nonetheless, despite the absence of any intent to deceive, the California Appellate court denied Bell Textron GARA protection because it did not report information to the FAA that it was duty bound to disclose. *Id.* at 1088.

Throughout the history of the single drive dual magneto, Continental has engaged in a pattern of concealment and misrepresentation of material information from the FAA. Even though the FAA expressed concern about the pattern of failures with single drive dual magneto design and the attaching hardware, Continental refused to correct the problem with the design and instead sought to focus the government's attention elsewhere. Continental shifted blame to pilots and mechanics and only admitted problems with the very specific engine/aircraft combination that was the subject of the FAA's inquiry. Then, in 2010, Continental dropped out of the market abruptly, without providing proper guidance to mechanics, owners, and operators as to the safety of its products.

### D.      Judicial Estoppel is Not Applicable Here

Not one of Plaintiffs' experts in all actions arising out of this accident have ruled out the dual magneto as being causative of the accident. Plaintiffs are not judicially estopped from pursuing this claim, which is consistent with the claims advanced in the other actions arising out of this accident.

**V.     CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that this Court deny defendant Continental Motors, Inc.'s Motion for Summary Judgment in its entirety.

Dated: June 14, 2019                                            Respectfully submitted,

**FARNAN LLP**

/s/ Michael J. Farnan
Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
jjfarnan@farnanlaw.com
bfarnan@farnanlaw.com
mfanran@farnanlaw.com

Cynthia M. Devers (admitted *pro hac vice*)
THE WOLK LAW FIRM
1710-12 Locust Street
Philadelphia, PA  19103

*Attorneys for Plaintiffs*