**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JOAN E. QUINN, Individually and as Personal Representative of the Estate of JAMES ALBERT QUINN, Deceased, et al.<br><br>Plaintiffs,<br><br>v.<br><br>AVCO CORPORATION, LYCOMING ENGINES, CONTINENTAL MOTORS, INC., TELEDYNE CONTINENTAL MOTORS, INC., BENDIX CORPORATION, ALLIED-SIGNAL, INC., HONEYWELL INTERNATIONAL, INC., JOHN DOE 1-50, JOHN DOE 51-100<br><br>Defendants. | )<br>)<br>)<br>)<br>) Civil Action No. 15-cv-1005-RGA<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' MOTION FOR REARGUMENT OF DEFENDANT
CONTINENTAL MOTORS, INC.'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs move this Honorable Court to allow reargument of the March 23, 2020 Order granting Defendant's Motion for Summary Judgment, based on the general aviation statute of repose, the General Aviation Revitalization Act, "GARA" Pub. L. 103-298 (1994), *reprinted in* 49 U.S.C. § 40101, note. In the furtherance of justice, Plaintiffs request this Court to reconsider the finding that the GARA defense applies to Continental in its capacity as the rebuilder and seller of the accident magneto, as opposed to its role as a "manufacturer." Applying GARA in this manner runs afoul of Third Circuit precedent in the case *Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701, 711 (3d Cir. 2018), *reh'g denied* (Dec. 11, 2018), *cert. denied sub nom. Avco Corp. v. Sikkelee*, 140 S. Ct. 860 (2020).

I. **STATEMENT OF FACTS IN SUPPORT OF REARGUMENT**

As this Court has recognized in its opinion, there is no dispute that the accident magneto was rebuilt and sold by Continental in 2002. (D.I. 268 at 9). "The magneto's data plate contains

an additional serial number, G02FA043R, which was the serial number assigned by Continental to a rebuilt dual magneto it produced in 2002". (D.I. 222 at 4-5; D.I. 222-1 at 33). The rotating magnet and housing (which contained the pole shoes) that were used to assemble the subject Magneto in 2004 were those used in the 2002 Continental rebuild. (D.I. 222 at 5; D.I. 268 at 10; D.I. 223 at 94, Kelly Dep. at 149:23-150:10, 150:22-151:4). Continental rebuilt the accident magneto under 14 C.F.R. § 43.3. It then sold the accident magneto, including the housing (which contains the pole shoes) and rotor assembly that were in the accident aircraft at the time of the accident. The rebuild and sale of the accident magneto were not done within Continental's capacity as a "manufacturer." Plaintiffs argued that the claims brought against Continental include allegations that they were brought in Continental's capacity as the rebuilder and seller of the accident magneto. (Tr. at 12:6-22) (D.I 266 at 2, 7-8). As detailed herein, Continental's role as a rebuilder (and then seller) is wholly separate from a manufacturer and does not enjoy the protections of GARA.

The Court arrived at its conclusion based on an interpretation of 14 C.F.R. § 43.3(j) that because only manufacturers are authorized to rebuild an aircraft part, Continental acted as a manufacturer in reselling the magneto. (D.I. 268). However, the duties of a maintenance provider are completely different and apart from the duties of a manufacturer. Section 43 "prescribes rules governing the maintenance, preventative maintenance, rebuilding, and alteration" of aircraft components. 14 C.F.R. § 43.1. The role and duties of manufacturers in their capacity as the manufacturer of aircraft components is governed by 14 C.F.R. § 21. The standards for engines are detailed in 14 C.F.R. § 33.

The authority given to manufacturers to rebuild components is entirely separate and apart from rebuilding or overhauling components. Continental can manufacture magnetos and

2

components because it holds a "Production Certificate", authorizing Continental to manufacture products and "Parts Manufacturing Approval" ("PMA"), authorizing the design. 14 C.F.R. §§ 21.131, 21.301. The Third Circuit explained the federal regulatory scheme applicable to manufacturers in their capacity as manufacturers in *Sikkelee*, 907 F.3d at 711, but Continental did not act that way here. In *Sikkelee,* the Court explained:

> A manufacturer seeking to make replacement parts generally must obtain a PMA, which allows the manufacturer to produce replacement parts for use on certificated products. *See* 14 C.F.R. §§ 21.8, 21.9, 21.303(a). A PMA holder may manufacture aftermarket parts, but must do so in accordance with the type certificate for the product, and must follow the same procedures as the type certificate holder. 14 C.F.R. §§ 21.8, 21.9, 21.303(a), 21.319; FAA Order 8120.22A, Production Approval Process, ch. 4-5, at 4-7 to 4-8 (2016). The manufacturer may obtain a PMA by showing (1) its product is identical to the certificated product, through evidence of a licensing agreement; (2) its product is identical to the certificated product, without a licensing agreement; or (3) tests and computations showing that its product meets airworthiness requirements. *See* 14 C.F.R. § 21.303; FAA, Order 8120.22A, 4-7 to 4-8. The process for changing a PMA design is the same as that for certificated designs; changes are classified as "major" and "minor," and major changes must receive FAA approval before they can be included in the design, while minor changes can be approved using a method acceptable to the FAA. 14 C.F.R. § 21.319.

907 F.3d at 711.

In the capacity as a manufacturer, Continental must ensure that each completed product or article to leave its manufacturing facility "conforms to the approved design and is in a condition for safe operation" and report failures, malfunctions, and defects in items that it manufactures, and to investigate failures. 14 C.F.R. §§ 21.146(e), 21.3. Continental did not conform with the duties outlined in Section 21 with regard to the magneto line it bought from Bendix in the 1990's. Instead, it chose to remain only a rebuilder, thus exposing it to tort claims for negligence and sale of defective parts which Plaintiff claims here. Therefore, as a rebuilder, Continental is not entitled to the protection of GARA.

## II.     LEGAL ARGUMENT

Reargument is necessary to correct a clear error of law and fact, and to prevent manifest injustice.  *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999); *see also N. River Ins. Co. v. CIGNA Reinsurance, Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).  Here, reargument should be granted because the Court erred in finding that the actions of "manufacturing" and "rebuilding" are synonymous for the purpose of GARA, (D.I. 268 at 12), and in failing to address Continental's sale of the accident components which is a state tort law claim not preempted by GARA.  (See D.I. 268 at 7-14).  The Court's decision is contrary to the precedential *Sikkelee* decision, which held that GARA does not bar Plaintiffs' state law claims and the state tort law system is fundamental to our justice system and federal regulatory scheme.

Continental never argued that it was afforded GARA protection for its actions taken as a rebuilder and seller of the accident magneto, although Plaintiffs have filed claims against Continental in those capacities.  (D.I. 1 at ¶¶18-25, Counts Four and Five).  "Because GARA's statute of repose is an affirmative defense, [defendant] has the burden of showing the affirmative defense applies."  *Lunn v. Hawker Beechcraft Corp.*, 417 P.3d 1206, 1211 (Ok. Civ. App. 2018).  Continental did not satisfy this burden with respect to the rebuild and sale.  Plaintiffs have argued that the rebuild and sale are not within Continental's capacity as a "manufacturer." (Tr. at 12:6-22) (D.I 266 at 2, 7-8).

The plain language of GARA and the legislative history weigh in favor of Plaintiffs' position, which this Court stated "would make more sense as policy."  (D.I. 268 at 13).  In interpreting a statute, the Court should begin with the language of the statute. *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989). To determine the plain meaning of a statutory provision, the specific provision at issue should be analyzed, in addition to the structure of the

4

statute as a whole, including its object and policy. *See e.g. United States v. Thornhill*, 759 F.3d 299, 308 (3d Cir. 2014). If ambiguity exists, Courts may look to legislative history as an aid to interpretation. *Byrd v. Shannon*, 715 F.3d 117, 123 (3d Cir. 2013).

> The plain language of GARA provides:
>
> (a) IN GENERAL.- Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the **manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer** if the accident occurred-
>
>> (1) after the applicable limitation period beginning on-
>> (A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or
>> (B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft; or
>
>> (2) with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

49 U.S.C. § 40101, note (emphasis added).

The plain language of GARA affords protection only to a "manufacturer acting in its capacity as a manufacturer." The statutory language is clear, and there is no mention of "rebuilders" or "sellers" of aircraft parts. Had Congress wanted to shield rebuilders and sellers, it could have included them. In fact, based on the plain language of this statute, Congress clearly considered the fact that a manufacturer could operate in a capacity *other* than that of a manufacturer – just as Continental did here. Indeed, the Court recognized, "Continental can only seek refuge behind GARA if it is the 'manufacturer of the aircraft or manufacturer of any new component system, subassembly, or other part of the aircraft." GARA§ 2(a)." (D.I. 268 at 11). However, the

5

Court extended the GARA defense to Continental for its role under Section 43 for the rebuild, a result Congress never intended.

That is because Congress recognized that a rebuilder may act negligently in its rebuild and GARA was never intended to apply to anyone except manufacturers in their capacity as manufacturers, which Continental never was with respect to this magneto. Continental had a PMA, which is only Parts Manufacturing Approval of someone else's part, in this case Bendix. In this instance it chose not to avail itself of GARA protection by acting solely as a rebuilder which was never included in the statute. This is why the Court felt the result of its analysis gave a "peculiar result." If the Court interprets the statute as Plaintiffs have urged, the result is entirely consistent with both the intent of Congress and the plain language of the statute.

However, even if the Court finds the statutory language to be ambiguous such that resort to legislative history is required, the legislative history of GARA further supports Plaintiffs' position that GARA does not insulate anyone other than manufacturers acting in their capacity as manufacturers. House Report 103-525(II) provides:

> Section 2(a) sets forth the legislation's basic limitation on civil actions for damages brought against manufacturers of general aviation aircraft and their component parts. This limitation applies with respect to civil actions arising out of "accidents," and it is limited to civil actions brought against a manufacturer "in its capacity as a manufacturer." The latter limitation is intended to insure that **parties who happen to be manufacturers of an aircraft or a component part are not immunized from liability they may be subject to in some other capacity.**

H.R. REP. 103-525(II) (emphasis added). Congress further stated: "[t]he liability of general aviation aircraft manufacturers is governed by tort law. . . . While the specific contours have ebbed and flowed, the public's right to sue for damages is ultimately grounded in the experiences of the legal system and values of the citizens of a particular State." H.R. Rep. No. 103-525(II), at 3-4 (1994). Respect for federalism and common law tradition had caused Congress "to tread very

6

carefully when considering proposals . . . that would preempt State liability law." *Id*. at 4.  Congress never intended to insulate rebuilders or sellers of aircraft components that happens to be manufacturers, such as Continental in this instance.

The plain language, intent, and legislative history do not include rebuilders, overhaulers, or sellers of aviation components.  However, the Court erroneously concluded that rebuilders and manufacturers are the same, and applied the GARA defense to Continental in its capacity as a rebuilder and seller, which are outside of Continental's role as a manufacturer. Rebuilding a magneto under Section 43 of the Federal Aviation Regulations is a maintenance procedure.  14 C.F.R. § 43.3 applies to the role of maintenance personnel, which includes manufacturers acting in their capacity as rebuilders.  The regulations that apply to manufacturers in their capacity as manufacturers, 14 C.F.R. § 21, go to the design, manufacture, airworthiness approval, and continuing airworthiness, as detailed above.

Indeed, the Court recognized that extending GARA protection over Continental, in its capacity as a rebuilder leads to a "peculiar result" because Continental performed the rebuild under 14 C.F.R. § 43.3 and "no third party has intervened to extend liability", so there is "no concern here of an endlessly restarting limitations period."  (D.I. 268 at 11-13).  This result, which the Court recognized was "peculiar" stems directly from adding the word "rebuilder" to the plain statutory language that applies only to a manufacturer in its capacity as a manufacturer.  This interpretation is not only contrary to the plain meaning of GARA, but there is also no precedent supporting the extension of GARA to "rebuilders" or "sellers."   In fact, such a finding belies the statutory text, purpose, and legislative history.

For example, in *Garcia v. Wells Fargo Bank Nw., N.A. Tr.*, No. 10-20383-CV, 2011 WL 6257148, at *3 (S.D. Fla. Dec. 14, 2011).  In *Garcia*, the defendant airplane manufacturer, Cessna,

7

was sued for negligence and strict liability as the manufacturer, designer, and seller of the dash 7 actuator control unit, a component that plaintiffs claim failed.  Cessna sold the unit 2 years before the accident.  Cessna argued that it could not be held liable for the sale of the replacement because the sale was incidental to their role as an airplane manufacturer.  *Id.* at *5. The court rejected Cessna's argument and stated: "**Neither the text of GARA nor the Judiciary Committee Notes make mention of a special exception for airplane manufacturers who then sell replacement parts.  The provisions of GARA and its legislative history confirm that GARA's protections begin and end with the Defendant's role as a manufacturer."** *Id.* at *3 (emphasis added) (finding no support in the text of GARA or in the Judiciary Committee Notes "to justify the extension of that protection to the Defendant when it acts in other capacities," and noting that "the Judiciary Committee Notes advocate just the opposite"). Further, the court held that GARA did not preempt the claims brought against manufacturers in their capacity outside the scope of manufacturer, even if it was incidental to the manufacture of the part.  *Id.* at * 3

Similarly here, the rebuild and sale of the accident magneto are not within Continental's role as a manufacturer.  Therefore, GARA should not apply with respect to the 2002 rebuild, and sale of the accident magneto.

Exonerating Continental from liability in relation to the 2002 rebuild and sale of the magneto (including the housing and rotor assembly) jeopardizes the safeguards afforded by the tort law system, which this Court recognized to be so important in *Wyeth v. Levine,* 555 U.S. 555 (2009), and undermines the Plaintiffs' right to a jury trial. The United States Supreme Court emphasized in *Levine,* "[s]tate tort suits uncover unknown […] hazards and provide incentives for [defendants] to disclose safety risks promptly. They also serve a distinct compensatory function that may motivate injured persons to come forward with information." *Id.*

In the context of aviation, the Third Circuit recognized the importance of state tort claims in *Sikkelee*. In that case, the Third Circuit rejected the defendant's argument that the plaintiffs' state law claims were preempted based on the federal regulatory scheme because of the important role tort law provides in the furtherance of aviation safety. *Sikkelee*, 907 F.3d 701, 715. The Court held:

> (1) "the Federal Aviation Act, the **General Aviation Revitalization Act of 1994**, and the regulations promulgated by the [FAA] reflect that Congress did not intend to preempt aircraft products liability claims in a categorical way," id. at 683; (2) "Congress has not created a federal standard of care for persons injured by defective airplanes," id. at 696; and (3) "the type certification process cannot as a categorical matter displace the need for compliance in this context with state standards of care," id. Thus, aircraft products liability cases … may proceed using a state standard of care, "subject to traditional principles of conflict preemption, including in connection with the specifications expressly set forth in a given type certificate."

*Id.* at 711-12.

Further, the grant of summary judgment on matters that are not preempted by GARA for the rebuild and sale of the accident magneto removed Plaintiff here of her right to have the case tried before a jury. U.S. Const., Amendment V, VII; *Duke Power Co v. Carolina Environmental Study Group*, 438 U.S. 59, 86 (1978) ("Due process applies to any adjudication of important rights.'").

The outcome of this Court's Order granting Continental's motion on the basis of GARA is a result at odds with Congressional intent and the language of the statute. Had Continental been solely a maintenance entity, there would be no argument that it is not protected for the rebuild under GARA. Plaintiffs seek reargument of this Court's ruling on this simple fact, so that the ruling comports with the intent and language of GARA.

In entering summary judgment under GARA, the Court stated: "I cannot rewrite the statute even though I think the statute as Plaintiffs want to interpret it would make more sense as policy."

9

(D.I. 268 at 13). However, Congress has already insured the policy that the Court found most sensible. Congress did not include "rebuilders" and "sellers" of aviation components within the protections of GARA. This conclusion is consistent not just with the policy and purpose of the statute, but with its plain meaning, its legislative history, and case law interpreting the statute. Therefore, Plaintiffs request this Court to reconsider its conclusion that GARA applies to rebuilders, and to enter a ruling that Continental is not protected under GARA as the seller of the magneto components installed on the accident aircraft.

This expansion of the statute is just what the Third Circuit declined to do twice in its decision interpreting GARA in *Sikkellee*. The Court explained:

> "[S]tate tort law and other similar state remedial actions are often deemed complementary to federal regulatory regimes, and this appears to be such a case.". "[T]he regulations are framed in terms of standards to acquire FAA approvals and certificates—and not as standards governing manufacturing generally," which indicates "that the acquisition of a type certificate is merely a baseline requirement." Sikkelee II, 822 F.3d at 694. Thus, "in the manufacturing context, the statutory language indicating that these are 'minimum standards,' means what it says." Id. (internal citation omitted) (quoting 49 U.S.C. § 44701). State-law claims, […], supplement the federal scheme and further its central purpose: safe aircrafts.
>
> Moreover, "immuniz[ing] aircraft and aviation component part manufacturers from liability for their defective product designs" is "inconsistent with the [Federal Aviation] Act and its goal of fostering aviation safety."

*Sikkelee*, 907 F.3d 701, 714-715. This Court, bound by this Third Circuit decision should not expand GARA beyond the protections that it was reluctantly enacted to afford.

### III. CONCLUSION

For the reasons discussed, Plaintiff respectfully requests that the Court grant Plaintiff's motion for reconsideration and vacate its judgment of summary judgment in favor of Continental.

Dated:  April 6, 2020                                                          Respectfully submitted,


                                                           FARNAN LLP

| | |
|---|---|
| OF COUNSEL: | /s/ Michael J. Farnan |
| Cynthia M. Devers, Esq. | Brian E. Farnan (Bar No. 4089) |
| THE WOLK LAW FIRM | Michael J. Farnan (Bar No. 5165) |
| 1710-12 Locust Street | 919 N. Market St., 12th Floor |
| Philadelphia, PA  19103 | Wilmington, DE  19801 |
| (215) 545-4220 | (302) 777-0300 |
| | bfarnan@farnanlaw.com |
| | mfarnan@farnanlaw.com |
| | |
| | *Attorneys for Plaintiffs* |